J-A16041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| STEVE HARRELL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| 7207 SAM LLC, ABBES CHARII'S | : | |
| GENERAL CONTRACTORS AND ABBES | : | |
| GENERAL CONTRACTORS, LLC | : | |
| _____ | : | |
| STEVE HARRELL | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FIKER TESEMA, GIRMAYE JIRU, AND | : | |
| ABBES GENERAL CONTRACTORS, LLC | : | |
| | : | |
| | : | |
| APPEAL OF: 7207 SAM LLC, FIKER | : | |
| TESEMA AND GIRMAYE JIRU | : | No. 1880 EDA 2021 |

Appeal from the Judgment Entered October 7, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 180700521,
180900612

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J. **FILED JULY 18, 2022**

7207 Sam LLC (Sam LLC) appeals from the judgment entered in the

Court of Common Pleas of Philadelphia County (trial court) in favor of Steve

Harrell (Harrell) and against it in the amount of $443,565.56 for injuries

_____

[*] Retired Senior Judge assigned to the Superior Court.

Harrell sustained during a fall down the front stairs of its property. Sam LLC challenges the jury's verdict as grossly excessive and seeks a new trial on damages or a substantial remittitur of the damages award. We affirm.

**I.**

**A.**

The relevant facts and procedural history of this case are as follows. In July 2018, Harrell initiated this action against Sam LLC and the above-named defendants seeking damages for injuries he sustained on September 16, 2016, after he fell on broken stairs at the residence located next door to his mother's home at 5117 Baltimore Avenue in Philadelphia (Property).[1] Sam LLC owns the Property and Harrell was 53 years old at the time of the accident.

The trial court held a jury trial in January 2020 and the jury entered a verdict against Sam LLC in favor of Harrell in the amount of $5,000. The jury found Sam LLC to be 51% negligent and Harrell 49% comparatively negligent. The trial court granted Harrell's motion for a new trial limited to the issue of damages with Sam LLC as the sole defendant.

**B.**

At the July 6, 2021 jury trial, Harrell described the accident stating, "We were sitting on the steps after playing cards and my nieces were down in

---

[1] The matters were initially listed at two separate docket numbers and were consolidated for purposes of discovery and trial. All defendants except for Sam LLC have since been dismissed from the lawsuit.

between the two houses, sitting down, and this guy ran up in between and sat between my nieces. So my nephews went down one side of the steps and I went down the other side of the steps. I tried to go down and the top step was broken and I tripped over it and fell." (N.T. Trial, 7/06/21, at 18). Harrell explained that he was unable to move after the fall, that his left leg swelled up and he had extensive pain in his knee, arm, wrist and shoulder. Harrell went to the emergency room at Mercy of Philadelphia Hospital the next morning where his knee was drained and he was given a splint for his left arm. He treated with West Philadelphia Medical Center for two to three months, three days per week, for therapy on his knees, arm and back. Harrell then treated at Penn Medicine where an MRI showed an ACL tear in his left knee, a meniscus tear to his right knee, a broken elbow, torn ligaments and a separated shoulder. He underwent total knee replacement surgery on his left knee in March 2019. Harrell was unable to have surgery on his elbow because of the time lapse and he has "constant tingling and numbness in my fingers." (*Id.* at 22). Harrell testified that his "back is in excruciating pain all day long. I can only stand for approximately five minutes before I am in severe pain." (*Id.* at 23).

Harrell noted with respect to his employment that he used to work as a basketball coach and middle school teacher earning approximately $40,000 per year, and that his "life has completely been changed" because he is unable to stand to teach in the classroom. (*Id.* at 24). Harrell's injuries have

impacted his daily life in that he is unable to play with his two young grandsons, prepare his own meals, needs to sit in a chair to bathe and struggles with insomnia and depression.

Regarding prior injuries, Harrell testified that had no elbow, back or shoulder injuries before the fall, but that he did sustain sports-related injuries to his knees, including a 2003 procedure where he "had bone chips removed . . . from wear and tear from playing sports." (**Id.** at 26).  Harrell recounted that he did fall twice on ice after the accident in this case while he was going to work in inclement weather.

On cross-examination, Harrell clarified that on the night of the incident, he fell down four steps and landed on the sidewalk, and that his chief complaint the next day at the ER concerned his knee and elbow.  Harrell acknowledged that he was cleared to resume his employment in October 2016 and explained that he "tried to go back to work but it didn't work out." (**Id.** at 35).  Defense counsel questioned Harrell about injuries that occurred subsequent to the 2016 accident, wherein he fell twice within a two-week period during snowstorms, and Harrell explained that he was evaluated for pain in his knee, wrist, elbow, shoulder and tailbone at that time.  (**See id.** at 40-41, 45-46).  The defense also played a surveillance video for the jury showing footage of Harrell in December 2019 at his mother's home, which defense counsel claimed during closing argument undercut Harrell's testimony that he could stand for only five minutes.  (**See id.** at 56, 106).  Counsel for

Harrell, however, argued to the jury that Harrell was limping throughout the video and was not moving quickly up the stairs or around the house. (*See id.* at 85).

Harrell presented the videotape deposition testimony of Dr. Maurice Singer, who has practiced family medicine for 40 years and began to treat Harrell at the end of October 2016. Dr. Singer explained that Harrell "had severe musculoskeletal injuries sustained on September 16, 2016 [while he] was at 5117 Baltimore Avenue at approximately 11:30 p.m. He was outside the house going down the steps that were broken up. His shoe got caught on the broken area of the steps, causing him to fall down multiple steps. As a result of the fall, he stated that he experienced pain in his neck, his right shoulder, left elbow, both knees, both ankles, right wrist and low back." (Deposition of Maurice Singer, 6/23/21, at 15-16). MRI scans showed that Harrell has "tremendous injury to his musculoskeletal system" in the form of tears and fractures resulting in tissue swelling and pain, and Harrell experiences "bone-on-bone grinding" with his knee injury. (*Id.* at 23, 29; *see id.* at 20-23, 27).

Dr. Singer and Dr. Frederick Lieberman, an orthopedic specialist who evaluated Harrell, determined that total knee replacement surgery was medically necessary. Dr. Singer also reviewed and concurred with the findings of an independent medical examination prepared by Dr. Richard Deshuttle in March 2019 detailing Harrell's extensive knee, elbow, shoulder and lumbar

injuries and opining that they were caused by his September 16, 2016 injury. (**See id.** at 30-33). Dr. Singer testified that Harrell "did not have these areas of trauma and injury prior to the fall" and that the fractures, ligament tears and other injuries have had a "tremendous impact on his status." (**Id.** at 35). The doctor's prognosis for Harrell is "extremely guarded" given the permanent nature of his condition and need for ongoing evaluation. (**Id.** at 36; **see id.** at 41). Dr. Singer also testified to the large medical bills Harrell has incurred since the fall, totaling nearly $50,000 with his office.

After counsel for Harrell rested his case, the defense called no witnesses to testify on its behalf. The jury awarded Harrell $869,736.40 in damages, with $41,558.40 in economic damages and $828,178 in non-economic damages, with Sam LLC responsible for $443,565.56 of this amount because of the prior comparative negligence finding. Sam LLC filed a post-trial motion seeking a remittitur or a reduction of the verdict amount, which the trial court denied. This appeal followed.[2] Sam LLC and the trial court complied with Rule 1925(b). **See** Pa.R.A.P. 1925(a)-(b).

---

[2] Sam LLC filed a premature notice of appeal in September 2021 before judgment was entered on the docket. Because judgment was entered on October 7, 2021, we consider this appeal timely. **See** Pa.R.A.P. 905(a)(5) (concerning premature notices of appeal).

**II.**

Sam LLC asserts that a new trial or substantial remittitur is warranted because the jury's damage award is grossly exorbitant and shocking to the judicial conscience. According to Sam LLC, the jury was guided by sympathy for Harrell and a desire to punish Sam LLC rather than by the actual evidence presented at trial. (**See** Sam LLC's Brief, at 13).[3] Sam LLC challenges the non-economic damages award where Harrell admitted that he has been injured in accidents other than the fall at its Property, and the video

---

[3]

> The grant or refusal of a new trial due to the excessiveness of the verdict is within the discretion of the trial court. This Court will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. . . . Similarly, our standard of review from the denial of a remittitur is circumspect and judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant. The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption. Furthermore, the decision to grant or deny remittitur is within the **sole discretion** of the trial court, and proper appellate review dictates this Court reverse such an Order only if the trial court abused its discretion or committed an error of law in evaluating a party's request for remittitur.

***Tong-Summerford v. Abington Mem'l Hosp.***, 190 A.3d 631, 650-51 (Pa. Super. 2018) (citation omitted; emphasis added).

surveillance footage of Harrell shows that he has substantially healed from his injuries. (*See id.* at 16, 18).[4]

We begin with the premise that large verdicts are not necessarily excessive and that each case is unique and dependent on its own particular circumstances. *See Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 857 (Pa. Super. 2012), *appeal denied*, 75 A.3d 1282 (Pa. 2013). "In awarding damages for past or future non-economic loss, a jury may consider, *inter alia*, the age of the plaintiff, the severity of his or her injuries, whether the injuries are temporary or permanent, the duration and nature of medical treatment, the duration and extent of physical pain and mental anguish on the part of the plaintiff, and the plaintiff's physical condition before the injuries." *Id.* (citation omitted). "Thus, noneconomic loss must be measured by experience rather than any mathematical formula." *Brown v. End Zone*, *Inc.*, 259 A.3d 473, 486 (Pa. Super. 2021) (citation omitted). "For this reason, **the law entrusts jurors, as the impartial acting voice of the community, to quantify noneconomic loss** and compensation." *Id.* (citation omitted; emphasis added).

With respect to compensatory damages, "this Court will not find a verdict excessive unless it is so grossly excessive as to shock our sense of

---

[4] Although Sam LLC presents five issues in its statement of the questions involved, it frames them as two in the body of its brief. We will address these interrelated claims together for ease of disposition.

justice." *Id.* (citation omitted).  A court may consider: "(1) the severity of the injury; (2) whether the Plaintiff's injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony of the Plaintiff [] (3) whether the injury will affect the Plaintiff permanently; (4) whether the Plaintiff can continue with his or her employment; (5) the size of the Plaintiff's out-of-pocket expenses; and (6) the amount Plaintiff demanded in the original complaint." *Id.* at 487 (citation omitted).

Instantly, the trial court determined that Sam LLC failed to establish that the jury's verdict was excessive.  It explained:

> There is nothing in the record, nor has Defendant presented any such evidence to suggest that the jury was guided by anything other than a clear and fair evaluation of the evidence presented. Defendant's post-trial motion argues that the verdict amount was so grossly exorbitant, when compared to the lack of objective evidence presented by Plaintiff, that the jury must have been improperly influenced.  However, Plaintiff testified at trial that he sustained injuries to both of his legs, his back, and his arms which resulted in him experiencing excruciating pain.  Additionally, Plaintiff continues to experience such agonizing pain that it has impacted his ability to work, enjoy his hobbies, or play with his grandchildren.  Finally, video testimony was presented of Dr. Maurice Singer who stated that Plaintiff's injury was directly caused by this accident and that the injuries, as well as the pain Plaintiff continues to experience, is likely permanent.

> In contrast to Plaintiff's arguments, Defendant presented no expert witnesses of their own to rebut the conclusions made by Dr. Singer, which supported Plaintiff's argument of a debilitating, permanent injury caused by this accident.  As a result, the jury could have reasonably concluded that the pain and suffering that Plaintiff will experience from his injuries, for the rest of his life, was worth the $828,178.00 awarded.

> This Court does sympathize with Defendant and would agree that several of the facts presented at trial by Defendant should

have been weighed more heavily by the jury. However, . . . just because this Court might have awarded different damages does not mean that the verdict, which bears a reasonable resemblance to the damages proven, should be overturned. Based on the testimony presented at trial, there is simply no basis for this Court to find that the jury's verdict could have only been reached because of an improper influence.

(Trial Court Opinion, 11/19/21, at 4-5) (record citations omitted).

We agree with the trial court's analysis and highlight its observation that Sam LLC chose not to call any witnesses to refute Harrell's evidence of a permanent and debilitating injury caused by the fall. We also emphasize that, although the verdict is large, that fact does not automatically translate into a finding of excessiveness in light of the evidence of the negative and far-reaching impact the accident has had on Harrell's daily life. The jury, in its role "as the impartial acting voice of the community," *see Brown*, *supra* at 486, was able to assess the credibility of Harrell and Dr. Singer and to consider all evidence presented during trial, at which Sam LLC had the opportunity to present its case and argue its version of the facts. Additionally, after considering all of the testimony and observing Harrell describe the fall and the resultant injury and pain, the trial court was not persuaded that the jury's damage award was excessive and instead concluded that it "bears a reasonable resemblance to the damages proven." (Trial. Ct. Op., at 5). Accordingly, having reviewed the record in light of the trial court's findings and affording its decision and the jury's verdict appropriate deference, we

discern no abuse of discretion or error of law in the court's denial of Sam LLC's request for a remittitur. **See *Tong-Summerford***, ***supra*** at 651.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2022